**Matatall v. Bouch.**

*David R. Johnson,* for plaintiff.
*David King, Christopher Mohney, Robert Hanak, Matthew Lautman,* and *David Hopkins,* for defendant.

AMMERMAN, *J.,* September 18, 2012—I. Statement of the Facts

The plaintiffs, Robert and Janice Matatall (Matatalls), purchased a home located at 7073 Main Street, Burnside, PA from defendant Kathy Bouch (Bouch). Bouch is a realtor employed by Powell & Associates Real Estate, LLC (Powell) who is joined as a codefendant in this case, Bouch acted as the realtor/owner/seller, and Powell acted as the listing agency for the home. Codefendant Fred Day (Day) was the building contractor who built the home. Construction was inspected by codefendant Guardian Inspection Services (guardian) to determine whether construction was within applicable construction codes. Codefendant Lawrence J. Spritz (Spritz) was the sole employee and, together with his wife, the owner of named codefendant ACI Services, Inc. (ACI). ACI/Spritz

156

performed an appraisal on the home in question.

Bouch had an existing house on the lot located at 7073 Main Street torn down and replaced with a new house. The new house was constructed by day. Guardian conducted inspections of the construction and issued permits and certifications on behalf of the borough of Burnside to Day. Guardian also inspected the house at various stages of construction to confirm compliance with various codes and ordinances. Construction was completed in 2009 and the home was listed for sale on May 18, 2010 by Ouch through Powell as the listing agency.[1] Ouch signed a seller disclosure statement on the property on May 18, 2010.[2] The Matatalls made an offer on the new house on June 24, 2010. Bouch made a counter offer on the same day which the Matatalls accepted by their signature on June 26, 2010.[3] ACI/Spritz performed an appraisal on the property with an effective date of July 21, 2010.[4]

The plaintiffs assert that immediately after moving into the home they experienced problems with the house. These problems include leaking pipes in the bathroom and kitchen, improper electrical work, wetness and leaking in the basement which caused black mold and ice build-up. They also allege that the insulation was improperly installed around the windows and that there were openings in the outside walls. Plaintiffs say that cracks developed in the basement floor through which water seeped. The

---

1. See *Uniform Residential Appraisal Report* prepared by ACI/Spritz. This document is identified as plaintiff's amended exhibit C.
2. See *West Penn Multi-List Inc. Seller Disclosure Statement* identified as plaintiff's exhibit A.
3. See *Standard Agreement for the Sale of Real Estate* identified as plaintiff's exhibit B.
4. See *Uniform Residential Appraisal Report* prepared by ACI/Spritz. This document is identified as plaintiff's amended exhibit C.

Plaintiffs further claim numerous plumbing problems with the home causing damage necessitating repairs.

The Plaintiffs claim that aspects of the house were not incompliance with applicable building codes regulating the various requirements for stairs and the required dimensions of support posts. They also claim that the fill around the basement wall consisted of dirt, broken glass and plastic. They claim that this is substandard fill and was in part responsible for settling and sinking of the house causing the drywall to crack.

In their amended complaint the plaintiffs indicate that the property was constructed on a flood hazard area as determined by the Federal Emergency Management Agency (FEMA). The plaintiffs claim that FEMA contacted Burnside Borough regarding the house being within a flood hazard area and that consequently the borough advised the Matatalls to fill in the basement leaving only a crawl space beneath the first floor to be compliant with FEMA's recommendation and the borough's flood plain ordinance. The plaintiffs contend that filling in the basement will significantly reduce the value of the house and contend that the absence of a usable basement substantially alters the character of the house they agreed to purchase in the above referenced sales agreement.

In their original and amended complaint the plaintiffs contend that after purchasing the home they learned that Bouch was aware water leaking into the basement. The plaintiffs assert that water had been running through the basement walls, and that this had occurred during an open house while the property was being offered for sale. They claim that though Bouch was aware of this, it was

disclosed by neither Bouch, nor Powell, nor Day.

The Matatalls complain that the Real Estate Sellers' Disclosure Law (RESDL) 68 P.S. §7301, et seq, imposed a statutory duty on defendants Bouch and Powell to disclose any known material defect in the property to the buyers in a disclosure statement. The Matatalls claim that the defects in the complaint were known to Bouch and Powell and their failure to disclose them was willful, wanton intentional and thus outrageous conduct in violation of the RESDL. For this they seek damages compensating them for their loss as well as punitive damages.

The Matatalls also claim that they were the victims of fraudulent misrepresentation by Bouch and Powell. The plaintiffs seek damages to compensate them for their loss including rescission of the sales contract, consequential damages, and punitive damages. They also claim that Bouch and Powell made negligent misrepresentations in the seller disclosure statement upon which the plaintiffs placed reasonable reliance when entering into the agreement purchase the property. For this they seek compensatory damages and any relief that the court finds appropriate. The Matatalls also claim that Bouch and Powell violated the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et seq (UTPCPL). For violating this act the plaintiffs are seeking three times their actual damages plus attorney's fees as provided for in the UTPCPL.

The plaintiffs claim negligence against guardian. Guardian was responsible for issuing the building permit authorizing Bouch to build the house, and responsible for inspecting the house through various stages of construction to insure compliance with applicable codes and regulations.

The Matatalls assert that by approving preliminary stages of construction and approving final construction of the house despite the alleged code and regulation violations, Guardian breached its duty to the plaintiffs as the final purchasers of the house. The plaintiffs claim that this was a direct and proximate cause of their damages and they seek compensatory relief and any damages that the court deems appropriate.

The plaintiffs claim negligence against ACI/Spritz for failing to indicate that the house was located in a FEMA designated flood hazard zone in the appraisal. The plaintiffs claim a breach of the implied warranty of habitability against Bouch and Day because the plaintiffs claim that the defects in the construction made the home uninhabitable.

The following opinion and order are limited to the preliminary objections raised by Bouch.

## II. Preliminary Objections by Bouch

Defendant, Kathy Bouch has filed preliminary objections to the plaintiffs' amended complaint based on rule 1028(a)(3) and 1028(a)(5) claiming that the plaintiffs' complaint lacked sufficient specificity and the that plaintiff failed to join a necessary party. However, the defendant's preliminary objection should be dismissed because the plaintiffs' compliant is not deficient in either respect.

### A. Failure to Join a Necessary Party

The first issue raised in the defendant's preliminary objection is that the plaintiffs failed to join their seller agent, Richard Ellenberger (Ellenberger) and Howard Hanna Realty (Howard Hanna) as defendants in this suit.

In her preliminary objection the defendant argues that Ellenberger and Howard Hanna are necessary parties and as such must be joined by the plaintiff. The defendant claims that because this was not specifically denied, that it is thus admitted. This is true of facts not of record, but it does not extend to conclusions of law. Therefore, it is admitted that Ellenberger and Howard Hanna were the buyer agent and real estate agency of the plaintiffs, but the defendant's characterization of them as necessary parties is a legal conclusion beyond that which requires a response.

To resolve whether Ellenberger and Howard Hanna are necessary parties it is important to determine the nature of their relationship to the litigants and to the action before the court. While not synonymous, the terms indispensible and necessary are conceptually similar with respect to joinder. "A party is indispensable when his rights are so connected with the claims of the litigants that no order can be made without impairing such rights. Necessary parties are those whose presence, while not indispensable, is essential if the court is to completely resolve the controversy before it and render complete relief. *York-Adams County Constables Ass'n by Sponseller v. Ct, of Com. Pleas of York County*, 474 A.2d 79, 81 (Pa. Cmmw. 1984) citing *The County of Allegheny v. Department of Public Welfare of the Commonwealth of Pennsylvania*, 376 A.2d 290 (1977). These terms are so similar that the Commonwealth Court of Pennsylvania has defined a necessary party almost identically to that of an indispensible party referenced above. "A necessary party is one whose rights are so connected with the claims of the litigants that no relief can be granted without infringing upon those

rights." *Pennsylvania Fish Commn. v. Pleasant Tp.*, 388 A.2d 756, 759 (Pa. Cmmw, 1978) citing: *Department of Transportation v. Pennsylvania Power & Light Company.* 34 Pa. Commw. 594, 383 A.2d 1314 (1978). Should an absent party be necessary or indispensible that party must be joined for the court to have jurisdiction. *Polydyne, Inc. v. City of Philadelphia*, 795 A.2d 495, 496 (Pa. Cmmw. 2002).

"A corollary of this principle is that a party against whom no redress is sought need not be joined." *Sprague v. Casey*, 520 Pa. 38, 49, 550 A.2d 184, 189 (1988) citing *Kern v. Duquesne Brewing Co.*, 396 Pa. 279, 152 A.2d 682 (1959); *In re Culbertson's Estate*, 152 A. 540 (1930). "In this connection, if the merits of a case can be determined without prejudice to the rights of an absent party, the court may proceed," *Id.* citing *Mechanicsburg Area School District v. Kline*, 494 Pa. 476, 431 A.2d 953 (1981).

It should be noted that the plaintiffs in the instant case seek no redress from Ellenberger or Howard Hanna. In fact, the plaintiffs' compliant does not mention them at all. Nor can it be said that Ellenberger's or Howard Hanna's rights will be affected by judgment in favor of either the plaintiffs or the defendants.

Because no redress is sought against Ellenberger and Howard Hanna, and the court can grant relief without affecting their rights, Ellenberger and Howard Hanna are neither indispensable nor necessary parties and the plaintiffs' failure to join them is not ground for sustaining the defendant's preliminary objection.

B. Insufficient Specificity of the Pleadings

162

The defendant's preliminary objection claiming insufficiency in the specificity of the pleading must be dismissed because the plaintiffs' complaint contains information sufficient for the defendant to ascertain the claim against her and are adequate to permit her to prepare an appropriate defense.

Rule 1028(a)(3) of the Pennsylvania rules of civil procedure provides for the filing of preliminary objections to a pleading if the pleading lacks sufficient specificity. Pa.R.C.P. No. 1028(a)(3). Rule 1019 governs the contents of pleadings. Pa.R.C.P. No. 1019. The pertinent question under rule 1028(a)(3) is "whether the complaint is sufficiently clear to enable the defendant to prepare his defense," or "whether the plaintiff's complaint informs the defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *Rambo v. Greene*, 906 A.2d 1232, 1236 (Pa. Super. 2006) (quoting *Ammlung v. City of Chester*, 224 Pa.Super. 47, 302 A.2d 491, 498 n. 36 (1973) (quoting 1 Goodrich-Amram § 1017(b)-9)).

Rule 1019 of Pennsylvania's rules of civil procedure governs the required nature, be it general or specific, of averments in pleadings. The purpose of this rule is to enable the parties involved in litigation to ascertain claims and defenses against them. See *Krajsa v. Keypunch, Inc.*, 622 A.2d 355 (Pa. Super. 1993). The defendant correctly points out that special damages must be specifically averred under this rule. However, general damages need not be specifically stated in a pleading, *Hooker v. State Farm Fire and Cas. Co.*, 880 A.2d 70, 77 (Pa. Cmmw. 2005).

Therefore, to properly resolve the defendant's preliminary objection based on insufficiency of the pleadings, it must be determined whether the damages alleged by the plaintiffs are special or general.

"Damages are general, those which are the usual and ordinary consequences of the wrong done, or special, those which are not the usual and ordinary consequences of the wrong done, but which depend upon special circumstances. General damages may be proved without being specially pleaded. . . [s]pecial damages, on the other hand, may not be proved unless the special facts giving rise to them are averred." *Parsons Trading Co. v. Dohan*, 167 A. 310, 312 (Pa. 1933).

The determinative issue is then whether the plaintiffs' alleged damages are a usual and ordinary consequence of the alleged wrong done by the defendant. In pages 3 through 8 of their complaint the plaintiffs set forth the alleged wrongs done by the defendant and the damages resulting from those alleged wrongs. The wrongs alleged by the plaintiff against the defendant can be summarized as a failure to properly construct the property, a failure to disclose that the property was located in a flood hazard area, and a failure to disclose known water leakage on the property. The damages claimed by the plaintiffs can be summarized as water damage and construction defects. The amended complaint further details five separate counts upon which the plaintiffs base their cause of action. The complaint leaves little doubt as to what grounds Bouch must make her defense. Moreover, the damages alleged are usual and ordinary damages for the wrongs alleged. Nothing in the complaint suggests special damages.

Therefore they need not be specifically plead. For these reasons the defendant's preliminary objection based on insufficient specificity must be overruled.

## III. CONCLUSION

The plaintiffs' real estate buyer agent, Richard Ellenberger and Howard Hanna Realty, are not necessary nor indispensible parties because the court can fully resolve the case without affecting the rights of the absent party and the Plaintiffs seek no redress against them. The Pennsylvania rules of civil procedure require only that special damages be specifically plead, whereas general damages can be generally plead. Because the damages claimed by the plaintiff are general they need not be specifically plead. The plaintiffs' compliant is not deficient by either standard offered by the defendant. Therefore the court enters the following:

## ORDER

And now, September 14, 2012 upon consideration of defendant Kathy Bouch's preliminary objections, and upon hearing oral arguments on the same, it is the order of this court that said preliminary objections are hereby dismissed.